```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION

Thomas J. Farrow,             :

        Plaintiff,            :

    v.                        :     Case No. 2:13-cv-1026

Commissioner of Social        :     JUDGE EDMUND A. SARGUS, JR.
Security,                           Magistrate Judge Kemp

        Defendant.            :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Thomas J. Farrow, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for supplemental security income. That application was filed on December 18, 2008, and alleged that Plaintiff became disabled on December 1, 2007.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on March 4, 2010, and, after an unfavorable decision by the ALJ and a remand from the Appeals Council, a second hearing on February 22, 2012. In a decision dated April 17, 2012, an ALJ again denied benefits. That became the Commissioner's final decision on August 13, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on June 12, 2014. Plaintiff filed his statement of specific errors on July 28, 2014, to which the Commissioner responded on November 17, 2014. Plaintiff filed a reply brief on February 17, 2015, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearings

Plaintiff, who was 48 years old at the time of the first

administrative hearing and who is a high school graduate with some college work, testified as follows.  His testimony appears at pages 31-60 and 83-118 of the administrative record.

At the first administrative hearing, Plaintiff testified that he had just completed a semester at Sacramento City College in 2008 and was working toward a degree in computer networking. His work experience included being an acupressure therapist and working as a student assistant in the California Department of Toxic Substances Control.  He stopped working due to diabetic ketoacidosis.

As to activities of daily living, Plaintiff said that he did laundry, occasionally vacuumed and mopped, and prepared meals several times per week.  He was able to go grocery shopping and to go to doctors' appointments.  Walking was painful due to a lifelong leg problem.  His only hobby was using a computer.  He did not socialize with anyone.  He took medications for bowel problems, high blood pressure, and high cholesterol. Additionally, Plaintiff took injections and pills for his diabetes and he took Prozac.

In response to questions about his medical conditions, Plaintiff testified that his bowel problems kept him from working.  He believed that other conditions such as back pain, headaches, and shoulder pain were related to his bowel condition. His doctors have diagnosed the problem as irritable bowel syndrome.  He had knee and hip problems, and could sometimes walk for miles and other times not at all.  Walking for half an hour would cause pain later.  Sitting for more than a few hours at a time was also problematic due to bloating.  Standing also caused pain and was actually worse than walking.  Since the onset of his bowel problems, Plaintiff spent a good deal of his time lying down.

Plaintiff had diagnosed himself with atypical depression.

He said he always had problems relating to people. He slept with a CPAP machine due to sleep apnea. Some days he experienced fatigue, and he never had much stamina.

At the second administrative hearing, Plaintiff testified to continuing mental health problems which caused him to be withdrawn. He had frequent suicidal ideation, but his concentration had improved since 2009. He continued to have bowel problems as well, with both constipation and diarrhea. That was one of the reasons he did not go out much. He otherwise repeated his testimony about leg and back problems.

### III. The Medical Records

The medical records in this case are found beginning on page 362 of the administrative record. The pertinent records - those relating to Plaintiff's statement of errors - can be summarized as follows.

Plaintiff saw Dr. Melendres on January 7, 2008. He reported developing weight gain, bloating, and constipation a year before, which had progressed to nausea, abdominal pain, lethargy, and confusion. He was subsequently placed on medication and was controlling his blood sugar fairly well. He was using laxatives and had a small amount of abdominal distension and left-sided discomfort. At an appointment on February 25, 2008, Plaintiff reported no new complaints and said he had only occasional constipation without pain and was managing well with miralax and dulcolax. (Tr. 372-75). He was subsequently examined for a colonic lesion, but tests were negative.

In January, 2009, he reported a one-year history of chronic constipation and abdominal bloating despite taking three different laxatives daily. His diagnoses at that time included obesity and a GI disorder. The examining doctor was "not convinced" that Plaintiff was unable to work at that time and would not extend his disability. (Tr. 453-54).

-3-

Plaintiff saw Dr. Martin on March 15, 2009, for an evaluation. His subjective complaints included diabetes, problems with his ankles, knees, and low back, and "chronic, unrelenting constipation" accompanied by urgent diarrhea at times. He appeared somewhat dysthymic and anxious. Dr. Martin concluded that Plaintiff had chronic back and ankle pain possibly related to Osgood-Schlatter disease, chronic constipation possibly related to either irritable bowel syndrome or diabetes, diabetes, and suspected hypertension. He said Plaintiff could lift 20 pounds occasionally and ten pounds frequently, and could stand and walk on and off for at least four hours in a workday. He should avoid hazardous tasks. (Tr. 491-93). A subsequent state agency reviewer, Dr. DeSouza, agreed that Plaintiff could work at the light exertional level, but thought he could stand and walk for six hours and that he would need a sit/stand option. Also, he could kneel, crouch, and crawl only occasionally. (Tr. 498-503).

A comprehensive psychiatric evaluation was also done in March, 2009 by Dr. Hicks. Plaintiff's only psychological complaint was depression, although at one point he was considered to have IBS, which was thought to be psychosomatic. He reported sleeping a great deal and was unable to work more than two or three hours per day. He appeared to be obsessed by his circumstances. The diagnoses included mixed condition of neurosis and depression, personality disorder, and a significant gastrointestinal problem which was unresolved. Dr. Hicks rated Plaintiff's GAF at 55 and thought he could do simple tasks, take simple instructions, relate adequately to others, and be consistent and regular "to some degree, but not sufficiently to hold down a job." (Tr. 494-97). A state agency reviewer, Dr. Walls, disagreed, concluding that Plaintiff did not have a severe mental impairment, and noting that Dr. Hicks did not report any

abnormal findings of an objective nature. (Tr. 507-20).

Plaintiff continued to seek treatment for constipation in 2009. He told Dr. Hata on March 11, 2009, that he obtained only poor relief with laxatives. Dr. Hata ordered a colonoscopy, which was completely normal. (Tr. 531-34).

In March, 2010, another consultative psychological examination took place, this one done by Dr. Hamilton at the request of Plaintiff's attorney. Plaintiff also reported depression to her, and said he was taking Prozac for that condition. He appeared friendly and anxious and was cooperative and attentive during the interview. However, he appeared sad and depressed. His full-scale IQ was measured at 100. Dr. Hamilton diagnosed a dysthymic disorder and rated Plaintiff's GAF at 40. She thought he would benefit from ongoing treatment including individual and group therapy. From an intellectual standpoint, he had some capacity to deal with both simple and complex tasks. She thought that due to his depression and medical status he could have difficulty sustaining full-time employment on either a daily or weekly basis. She also described restrictions on his ability to interact with others and to perform tasks requiring sustained concentration, mental alertness, task completion, and work efficiency. (Tr. 589-94). She also completed a questionnaire on which she stated he would miss more than four days of work per month. (Tr. 600).

Dr. Onate treated Plaintiff for his mental health conditions. He filled out a mental impairment questionnaire on March 4, 2010, stating that Plaintiff suffered from depression and that his prognosis was "moderate" with treatment. He thought Plaintiff could not meet competitive standards in a number of areas due to difficulties staying on task or concentrating, poor social skills, the fact that his sleep disturbance affected his energy levels, and his sense of worthlessness. Dr. Onate also

described Plaintiff's anxiety and frustration when dealing with instructions. However, he classified Plaintiff's restriction in activities of daily living as mild, and said he had only moderate difficulties in maintaining social functioning and maintaining concentration, persistence, and pace. He also thought Plaintiff would miss more than four days of work per month. (Tr. 601-607).

Plaintiff underwent a complete orthopedic evaluation on January 27, 2011. His chief complaint was pain in various joints and in his back. He sat and stood normally during the evaluation. He exhibited some pain and tenderness in his back. Range of motion studies were basically normal. Plaintiff did have some valgus deformity in both ankles, and pain limited their range of motion. Motor strength was normal. Dr. Flanagan, the examiner, found Plaintiff to be able to do medium work with a limitation on walking or standing to six hours per day. (Tr. 629-35). A state agency reviewer, Dr. Dipsia, concurred. (Tr. 640-44).

A third mental status evaluation was done on March 4, 2011, by Dr. Tanley. Plaintiff described his bowel problems and also his congenital joint problems. His affect was sad and his eye contact was variable. He demonstrated good cognitive skills and maintained good attention and concentration. Dr. Tanley thought Plaintiff's ability to deal with others in a work setting would be "problematic" due to Plaintiff's self-report of difficulties in that area, and he thought Plaintiff's ability to deal with work pressure would be impaired "given his very obvious depressive symptomology." He rated Plaintiff's GAF at 50. (Tr. 647-50).

Plaintiff's medical records show that he was still reporting problems with constipation into 2011. He had another colonoscopy done on July 25, 2011, which showed few abnormalities, although it did reveal mild sigmoid diverticular disease. (Tr. 669). Dr.

-6-

Thurman, who ordered the colonoscopy, also filled out an "Irritable Bowel Syndrome Medical Source Statement." He noted that Plaintiff suffered from constipation, abdominal distention, and episodes of loose stool and that he had mild to moderate abdominal pain. Miralax made his bowels "somewhat more regular." Dr. Thurman said Plaintiff needed a job which provided ready access to a restroom and that he might have very little advance notice of the need to use the restroom. He could, however, tolerate normal work stress. (Tr. 678-81).

## IV. The Vocational Testimony

Dr. Robinson was the vocational expert in this case. She testified only at the second administrative hearing, and her testimony begins on page 60 of the administrative record.

Dr. Robinson first classified Plaintiff's past work as being a general clerk, a semi-skilled job performed at either the light or medium exertional levels, and being an acupressure therapist, which is semi-skilled and typically performed at the medium exertional level, although Plaintiff performed it at the very heavy level.

Dr. Robinson was then asked some questions about a hypothetical person who could work at the medium exertional level without other limitations. She said that person could do both of Plaintiff's prior jobs. If the person needed to alternate between sitting and standing every 45 minutes, he or she could not do any medium work, and would probably be limited to sedentary work. Dr. Robinson then named a number of sedentary jobs available to such a person, including sorter, packer, and machine tender.

The next hypothetical omitted the sit/stand option, but included limitations on the ability to sustain attention (no work with critical production quotas), to tolerate co-workers and supervisors, and to adapt to changes in the work setting.

Neither of Plaintiff's past jobs could be done by someone with those limitations due to the amount of interpersonal contact, but the jobs of inspector, machine tender, and laundry laborer would be available. If the person also needed a sit/stand option, he or she could still work as a machine tender or laundry laborer, and could also be a sedentary inspector.

Finally, Dr. Robinson was asked to assume the person would, at times, have to make ten daily trips to a restroom at unscheduled times. She responded that such a person could not work. The same would be true for a person off task 15-20% of the time due to psychological issues. She also testified that needing to change positions every thirty minutes, rather than every 45 minutes, did not change her answer about jobs available to someone with a sit-stand option, and that someone needing just three to five unscheduled restroom breaks per day could not be employed.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision is found at pages 149-169 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity since his application date of December 18, 2008. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including mixed condition of neurosis and depression, dysthymic disorder, personality disorder, diabetes, external tibia torsion and internal rotation of the hips, bilateral ankle valgus deformity, history of myofascial strain, and bilateral pes planus. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the medium exertional level. Additionally, he was limited to the completion of tasks where production quotas are not critical, and he could tolerate coworkers, supervisors and the general public with limited personal demands in an object-focused work setting. He could also adapt to routine changes in a stable work setting. The ALJ found that with these restrictions, Plaintiff could perform his past relevant work as a general clerk, and he could do certain jobs identified by the vocational expert, including inspector, machine tender, and laundry laborer. The ALJ also determined that these jobs existed in significant numbers in the national and regional economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff identifies nine separate issues which he believes support either reversal or remand. They are, as stated in his memorandum (Doc. 13, at 1):

(1) Form Questionnaires are flawed and create invalid basic presumptions;

(2) Plaintiff's past relevant work was misclassified as medium exertion instead of sedentary;

(3) ALJ O'Neil failed to provide good reasons for not giving treating-physician Dr. Onate's opinion controlling weight;

(4) ALJ O'Neil lacked substantial evidence in a general finding of Mr. Farrow's credibility;

(5) The five step sequential process of 20 CFR §416.920 was not followed;

(6) the step 4 RFC is meaningless boilerplate indicating a substantial lack of evidence;

(7) ALJ's severity analysis of plaintiff's IBS is

   based on ignorance of the condition;

      (8) ALJ O'Neil failed to provide good reasons for according treating-physician Dr. Thurman's opinion no weight; and

      (9) Lack of substantial evidence to support musculoskeletal severity findings.

   The Court will address these issues in a different order, and, for reasons more fully discussed below, does not find it necessary to address each separately.  To the extent that any of Plaintiff's claims raise the question of whether the evidence supports the ALJ's decision, those claims will be evaluated under the following legal standard.

   Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court

would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Severe Impairments

Taking the claims raised in logical order, the first issue relates to the finding made by the ALJ that Plaintiff's bowel problems and suspected irritable bowel syndrome do not constitute a severe impairment. This is an issue on which remand is required.

Under social security law, a severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). The question of severity is not related to the claimant's age, education, or work experience. A nonsevere impairment is one which would not be expected to interfere with a claimant's ability to work regardless of "whether the claimant was sixty-years old or only twenty-five, whether the claimant had a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary." Salmi v. Secretary of H.H.S., 774 F.2d 685, 691-92 (6th Cir. 1985).

A claimant is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which the claimant must prove in order to establish disability within the meaning of the Act. Gist v. Secretary of H.H.S., 736 F.2d 352, 357 (6th Cir. 1984); see also Social Security Ruling 86-8

(identifying the question of whether the claimant has a severe impairment as the second step of the sequential evaluation process). An impairment will be considered nonsevere only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." Farris v. Secretary of H.H.S., 773 F.2d 85, 90 (6th Cir. 1985), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). The Commissioner's decision on this issue must be supported by substantial evidence. Mowery v. Heckler, 771 F.2d 966 (6th Cir. 1985).

Here, the Commissioner does not argue that the ALJ had a substantial basis for determining that Plaintiff's bowel problems, whether they constitute IBS or some other malady, was not severe. That would be a difficult argument to sustain on the basis of this record. Plaintiff sought treatment for that impairment over the course of many years, and reported little improvement in his symptoms over that time. His symptoms included bloating, constipation, and periods of diarrhea, and he was treated by various physicians with laxatives and other medications. No one questioned the existence of this impairment or the fact that it caused symptoms. Although some sources suggested that it had a psychological overlay, that did not mean that it was not an actual impairment or that Plaintiff was either imagining or controlling its symptoms. Given that Plaintiff's most recent treating physician, Dr. Thurman, found that this condition was potentially disabling, to determine that it did not meet the "severity" threshold is an unreasonable interpretation of the record.

The ALJ seems to have reached his conclusion based, first, upon the comments in the record that Plaintiff was "psychologically focused on his bowels and constipation" - which, as noted, did not mean that his condition was neither real nor

that it produced at least some symptoms that affected his basic work abilities - and that most of the physical tests of Plaintiff's bowels were normal. Given that IBS is diagnosed after tests rule out other causes for a patient's symptoms, the presence of normal tests is not an indication that IBS is not present - just the opposite. As another court has noted, "it was error for the ALJ to discredit plaintiff because the objective tests used to diagnose her IBS did not indicate a bowel disorder or colonic infection." <u>Alcock v. Commissioner of Social Sec. Admin.</u>, 2011 WL 5825922, *4 (D. Or. Nov. 16, 2011); <u>see also</u> <u>Raduc v. Comm'r of Social Security</u>, 380 Fed. Appx. 896, 898 (11th Cir. 2010)(pointing out that using such negative test results to discount any functional limitations from IBS reflects "a misunderstanding of the nature of this condition").

     The Commissioner does argue, however, that any error at step two of the sequential evaluation process is harmless if the ALJ proceeds to make a residual functional capacity finding. That is true up to a point; but, as this Court said in <u>Taylor v. Astrue</u>, 2012 WL 870770, *5 (S.D. Ohio March 14, 2012), <u>adopted and affirmed</u> 2012 WL 1268178 (S.D. Ohio April 13, 2012), if the ALJ makes an error at step two, "the question becomes whether the effect of these [nonsevere] conditions was properly taken into account at step four of the process when the ALJ determined plaintiff's ... residual functional capacity." There was nothing in the residual functional capacity finding made in this case which reflected any impact of IBS or other abdominal disorders. That is somewhat surprising given that the ALJ specifically accorded "great weight" to Dr. DeSouza's findings as to Plaintiff's physical limitations, and one of those findings - not mentioned in the ALJ's discussion of the opinion evidence - was that Plaintiff would need "easy access to bathroom facilities." (Tr. 500). In short, there is evidence in this record both as to the existence of a severe bowel impairment and limitations

flowing from that impairment to undermine the ALJ's determination that it was not severe, and to call into question his failure to include any limitations from that condition in the physical residual functional capacity assessment.  These errors, standing alone, are cause for a remand.

    B.   <u>Treating Source Opinions and Other Medical Opinions</u>

    The next issue which the Court will address relates to the ALJ's decision not to give controlling weight to the opinions of treating sources, particularly Drs. Thurman and Onate.  The Court will also address some issues relating to other medical source opinions, including Drs. DeSouza and Tanley.

    As far as treating sources are concerned, it has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(c); <u>see also</u> <u>Lashley</u> <u>v. Secretary of H.H.S.</u>, 708 F.2d 1048, 1054 (6th Cir. 1983); <u>Estes v. Harris</u>, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  <u>Moon v. Sullivan</u>, 923 F.2d 1175 (6th Cir. 1990); <u>Loy v. Secretary of HHS</u>, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  <u>Cutlip v. Secretary of HHS</u>, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision.  <u>Wilson v. Comm'r of Social Security</u>, 378

F.3d 541, 544 (6th Cir. 2004).

The ALJ explained his rationale concerning the treating sources in this way. First, as to Dr. Thurman, the ALJ noted that he had already found Plaintiff's abdominal impairment to be non-severe. He then concluded that there was no objective medical evidence of the need to have constant access to a restroom; that Dr. Thurman's opinion was based on Plaintiff's self-reported symptoms but that Plaintiff was not reliable; that Dr. Thurman was not shown to be familiar with Social Security disability standards; and that his opinion was inconsistent with Plaintiff's activities of daily living (although he did not say which ones). (Tr. 166). As to Dr. Onate, the ALJ repeated his observation that this source was not familiar with Social Security disability standards; said that the opinion that Plaintiff would miss four days of work per month was "not substantiated by the objective medical evidence," which showed that Plaintiff had "managed" his depressive symptoms with Prozac; pointed out that Plaintiff had not regularly sought mental heath treatment or been hospitalized for mental health issues; and stated that it was unclear how often Dr. Onate actually treated Plaintiff. The ALJ also relied on inconsistencies between Dr. Onate's opinions and those of non-treating sources, including Dr. Tanley and Dr. Hamilton. (Tr. 161).

There are some substantive deficiencies in the ALJ's evaluation of these opinions. This Court has expressed doubt about whether an affirmative showing must be made about a treating source's familiarity with social security regulations before deference is given to the *medical* opinions expressed by that treating source. See Stillion v. Comm'r of Social Security, 2014 WL 5432130, *7 (S.D. Ohio Oct. 27, 2014), adopted and affirmed 2014 WL 7334256 (S.D. Ohio Dec. 19, 2014). It is hard to understand how familiarity with a set of legal rules would affect a physician's opinion about the frequency with which a

-15-

person suffering from IBS would need restroom breaks, or how often a mental impairment would prevent a person from being present at work.  It is also difficult to envision the type of objective medical evidence that would substantiate the need for ready access to a restroom, especially when medical tests for IBS are intended not to confirm the diagnosis of that disorder but to rule out other possible explanations for the patient's symptoms.  Further, a physician diagnosing and treating IBS must rely to some extent on the Plaintiff's description of his symptoms, and the length of time that Plaintiff reported severe bowel symptoms, the consistency of his reports over time, and the treatment regimen which Dr. Thurman and others prescribed and which Plaintiff followed is not consistent with someone exaggerating or mis-reporting symptoms.  As to the mental impairment, there is also a difference between being able to "manage" depressive symptoms and being able to work consistently despite those symptoms.  Further, the record does reflect the frequency of Plaintiff's visits with Dr. Onate and does indicate that he sought and received mental health counseling and treatment on a fairly regular basis, and the fact that someone is not hospitalized for mental health treatment is not inconsistent with the presence of a severe or even potentially disabling impairment.  Lastly, mere inconsistency between the opinion of treating sources and either non-treating or non-examining sources is never a reason, in and of itself, for disregarding the treating source opinions.  Hensley v. Astrue, 573 F.3d 263, 266 (6th Cir. 2009).  Consequently, the ALJ relied on many reasons for discounting the treating source opinions which are not supported by the record.

There are also articulation issues within the ALJ's discussion of these opinions.  For example, the ALJ made conclusory statements about inconsistencies between Dr. Thurman's opinions and the "credible" portion of Plaintiff's testimony

-16-

concerning his activities of daily living without explaining either what portion of that testimony the ALJ found to be credible, or how it was inconsistent with Dr. Thurman's views. The ALJ also did not describe in any detail, for the benefit either of the Plaintiff or the reviewing court, what objective medical evidence, apart from the conflicting views of other non-treating or non-examining sources, conflicted with Dr. Onate's opinion.  Under <u>Wilson</u>, this failure of articulation also provides a basis for remand.

There are also some issues with the ALJ's treatment of other medical source opinions.  As noted above, the ALJ made no mention of that portion of Dr. DeSouza's opinion relating to a sit/stand option, although that opinion was assigned great weight, raising a question about whether the ALJ understood that such a restriction was in the opinion and whether he engaged in a reasoned process of rejecting it.  The ALJ also assigned great weight to Dr. Tanley's opinion, using it as a basis for assigning less weight to the treating source opinions (as well as some other examining sources), without explaining why that portion of his opinion stating that Plaintiff would have difficulty dealing with work stress due to "obvious depressive symptoms" was either not accepted, or how it was factored into the residual functional capacity finding.  He did discount some of Dr. Tanley's opinions about Plaintiff's ability to interact with others (although that portion of the ALJ's decision, <u>see</u> Tr. 159, refers to Dr. Tanley as "Dr. Hicks"), on the basis that this portion of the opinion was based on Plaintiff's self-report, but so is much of the balance of the opinion, and it is unclear how the ALJ distinguished between the bases of those opinions which were consistent with Plaintiff's ability to work and those which called that ability into question.  Finally, assigning perhaps the greatest weight to the opinion of Dr. Walls, the state agency reviewer, who neither found a severe psychological impairment

(concluding that the only psychological impairment substantiated by the record was a personality disorder), and who did not have any psychological evaluations or treatment records to review except for that of Dr. Hicks (Dr. Walls signed the review form in April, 2009), is problematic as well.  All of these issues can be addressed by a more thorough review and evaluation of the evidence on remand.

### C.  Other Issues

Although Plaintiff has raised a number of other issues in his statement of errors, it is not necessary, in light of the remand to be ordered for the reasons set forth above, to discuss them in any great detail.  The Court would note, however, that the ALJ's general discussion of credibility suffers from some flaws, including the citation to activities of daily living and part-time work activities (performed at home) as evidence that Plaintiff did not have work-preclusive physical limitations; those activities, as Plaintiff described them, do not appear in any way inconsistent with his claim of abdominal discomfort and unpredictable restroom needs.  It would be important for the ALJ to explain "how Claimant's ability to occasionally perform these routine tasks demonstrates that []he is 'not as limited as alleged,'" at least from a physical standpoint.  See Sahagun v. Colvin, 2014 WL 6613339, *8 (N.D. Ill. Nov. 21, 2014).

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained and the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the

objection(s).  A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge